## Hoeveler-Stutz Co. v. Cleveland Motor Sales Co. et al.

*Bailment—Sales—Transfer of possession.*

1. It is the duty of one buying personal property to inquire whether or not the vendor has title thereto.

2. As a general rule, a bailee does not have the right to dispose of property bailed, and the person who buys from the bailee acquires no title; but if there is a general course of conduct upon the part of the owner of an automobile permitting the bailee of the car to hold himself out as its owner and do other acts and things which are misleading, an estoppel results, and the owner cannot reclaim the car from a *bona fide* purchaser.

3. Where the owner of a car transfers possession of it under a bailment lease for the purpose of sale and the car is placed on exhibition, with the knowledge of the bailor, in a showroom of the bailee with other automobiles placed there for sale, the bailor cannot recover the car from a *bona fide* purchaser to whom it was sold by the bailee.

4. In such case, the bailor is estopped from saying that the bailee had no authority as agent to make the sale.

Replevin. Motion for judgment *n. o. v.* C. P. Blair Co., Oct. T., 1925, No. 102.

D. L. Claycomb, D. S. Horn and E. Lowry Humes, for plaintiffs.

J. J. Haberstroh, for defendants.

BALDRIGE, P. J., Oct. 1, 1926.—The Hoeveler-Stutz Company of Pittsburgh were distributors for the Stutz automobile. They entered into a dealers' sell-

ing agreement, bearing date of April 20, 1925, with R. R. Rossman, trading as the Cleveland Motor Sales Company of Altoona. On July 13, 1925, an agreement in the nature of a bailment lease was entered into between the Hoeveler-Stutz Company and Rossman for one Stutz car. On the same day, the agreement and notes mentioned therein were assigned by the Hoeveler-Stutz Corporation to the Automobile Guarantee Corporation, a finance company of Pittsburgh. Rossman obtained possession of the car and put it on exhibition in his storeroom. On Sept. 29th the car was disposed of to the defendant, William B. Knisel, by Rossman under a so-called lease, whereby Knisel agreed to pay $2670, payable as follows: $2126 on the day of the execution of the lease and the balance on or before the delivery of the car. When all the terms were complied with and upon the payment of one dollar, the title to the car was to pass to Knisel.

The additional sum of over $500 that Knisel had to raise was obtained under a lease of the car to the Manufacturers Finance Company of Baltimore. Knisel paid from time to time his obligations under this lease. The money obtained from the Baltimore Finance Company was paid to Rossman, who failed to deliver it to the Automobile Guarantee Corporation, and thereupon it issued a writ of replevin for the car. The case, therefore, involves the legal title to the car.

It is the duty of one buying personal property to inquire whether or not the vendor has title thereto. As a general rule, a bailee does not have the right to dispose of property bailed, and the person who buys from a bailee acquires no title. But if there is a general course of conduct upon the part of the owner permitting the bailee to hold himself out as the owner of the car and do other acts and things which are misleading, an estoppel results and the owner cannot reclaim a car from a bona fide purchaser.

The possession of the car in the instant case was given to Rossman for the purpose of sale. The owner clothed him with apparent ownership. The car was placed on exhibition in a show-room where other automobiles were placed for sale. The Hoeveler-Stutz Company had a representative visit Rossman, kept check on the number of cars he had in stock and to whom cars were leased, and a Mr. Lemon, a representative of the Automobile Guarantee Corporation, visited Rossman and made collection of the rentals on different cars leased from time to time. When the possession of this car was obtained under replevin proceedings instituted by the Automobile Guarantee Corporation, it was taken back and delivered to the Hoeveler-Stutz Company and operated under their license. Under the evidence, the relation and the actions of the Hoeveler-Stutz Company and the Automobile Guarantee Corporation were such that it could be fairly concluded that they were engaged in a general purpose and that they both possessed the knowledge of the conduct of Rossman, and, if so, an estoppel arose against the Automobile Guarantee Corporation from asserting claim of ownership after they had given authority to Rossman to dispose of the car to an innocent party. There was a close business relation between these two companies. They engaged in a joint undertaking for their mutual advantage. This was not an isolated case of a disposal of one car, but it was the general method used to finance many, if not all, of the cars purchased by the Hoeveler-Stutz Company. The plaintiff is, therefore, estopped from alleging title to the automobile: Leitch v. Sanford Motor Co., 279 Pa. 160; Commercial Motors Mortgage Corp. v. Waters, 280 Pa. 177; Truck Tractor and Forwarding Co. v. Baker, 281 Pa. 145.

It does not lie in the mouth of this plaintiff, after giving the authority to Rossman to display the car in his show-room in a manner to attract attention

and permit him to sell it to an innocent purchaser who complied with his part of the agreement, to say that the agent did not have the authority to make the sale; that the title was not in him, and repudiate the sale when the purchaser complied with his part of the agreement. The methods of these finance companies may make it easy for purchasers of automobiles to make their payments, but it is wrong and an injustice to the public to clothe with authority their agents to make sale and to attempt to retain secret liens or the title to the prejudice of *bona fide* buyers.

It is pertinent to quote what was so well said by Mr. Justice Schaffer in Root *v.* Republic Acceptance Corp., 279 Pa. 55: "The complicated dealings between many of those trafficking in and loaning money on automobiles has reached a point where the courts must strip transactions of their pretences and look at them as they really are, with the camouflage of papers giving a similitude of the passing of title removed, or they will be dealing with fictions instead of facts. Those who buy and sell, bail and loan money on motor-vehicles must be given to understand that the realities of their transactions will be sought for by the courts; they will look through the screen of paper titles to ascertain what was the real situation."

There were objections made to the scope allowed the defence in the cross-examination of the vice-president of the plaintiff company. He was called to prove a written contract, and it was proper that the defendant be allowed, on cross-examination, to prove all of the facts and circumstances germane thereto, especially in view of the fact that he is a party interested in the suit: Bank *v.* Fordyce, 9 Pa. 275; Felski *v.* Zeidman, 281 Pa. 419.

The motion for judgment *n. o. v.* is overruled and judgment is directed to be entered on the verdict.

From Robert W. Smith, Hollidaysburg, Pa.